**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** ) ) ) ) v. ) ) **STEPHANIE HEATHER OSBORNE**, ) ) Defendant. ) | Case No. 1:07CR00019 **OPINION** By: James P. Jones Chief United States District Judge |

*Dennis H. Lee, Special Assistant United States Attorney, Abingdon, Virginia, for United States; Stephanie Heather Osborne, Pro Se Defendant.*

The defendant, a federal inmate, brings this Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C.A. § 2255 (West Supp. 2009). Upon review of the record, I find that the § 2255 motion must be denied.

I

A grand jury of this court returned a sixteen-count indictment on March 21, 2007, charging that Stephanie Heather Osborne and her codefendant, Joey Franklin Phillips, conspired to distribute and on numerous occasions did distribute oxycodone, a Schedule II controlled substance, in violation of 21 U.S.C.A. §§ 841(a)(1) and 846 (West 1999 & Supp. 2009). On June 30, 2007, Osborne pleaded guilty, pursuant to a written plea agreement, to the conspiracy charge and three counts of distribution of oxycodone.

According to the Presentence Investigation Report ("PSR"), the government had acquired the following evidence against Phillips and Osborne:

> During early 2006, the Tazewell County, Virginia, Narcotics Task Force, as well as agents with the Bristol, Virginia, office of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) received information that Joey Phillips and Stephanie Osborne were involved in the distribution of large quantities of OxyContin in both Tennessee and Virginia. Therefore, an extensive investigation was launched, and the details are as follows. From July 2006 to January 24, 2007, l6 controlled purchases of OxyContin were made from Phillips and Osborne. During each of those purchases, confidential informants (CI's) purchased one or two 80 milligram OxyContin tablets for $100 per pill. As the investigation proceeded, law enforcement determined that at least four individuals were selling OxyContin for both Phillips and Osborne and an interview with one of those individuals revealed that Phillips and Osborne provided them with a list of 25 individuals and couples to whom they were allowed to sale OxyContin. In exchange for selling the OxyContin, Phillips and Osborne would give the individual one OxyContin 80 milligram tablet for every 12 pills that were sold. Agents also interviewed 11 individuals that had been purchasing OxyContin from Phillips and Osborne for the past three years.
>
> According to grand jury testimony, an unindicted individual testified that Phillips and Osborne were his OxyContin source. He stated that on one occasion, he observed a pistol laying on the console of Phillip's truck, and that same individual testified that he had been to Osborne's trailer and, in the bedroom, observed a pistol laying on her dresser. That witness also testified that he had observed a gallon ziplock baggie at Osborne and Phillips' residence which was full of 80 milligram OxyContin pills. A second witness testified that he began purchasing Oxycontin from Osborne in 2003 and 2004, up until November 2006. That witness admitted that in mid-2005, he began selling Oxycontin for Osborne and Phillips and, at one time, was selling as many as 800 to 1,000 pills per week. That individual also testified that Osborne had previously stated to him that she carried a firearm because she was afraid of getting robbed.
>
> Based on the above, authorities arrested Phillips and Osborne on March 22, 2007. Found on Phillips' person were five 80 milligram and seven 40 milligram OxyContin pills, $471, a cellular phone, and business cards. Immediately following his arrest, a search warrant was executed at the residence of Phillips and Osborne in Pounding Mill,

> Virginia. Seized from a chest of drawers in the master bedroom was ammunition, as well as two firearms, a loaded Smith & Wesson, model 36, .38 caliber five-shot revolver, serial number 288301, and a loaded North American Arms five-shot revolver, serial number L062098. Also, a Keystone Sporting Arms Inc., .22 caliber bolt-action rifle, serial number 145585, was discovered in a closet in the master bedroom. Authorities seized from the same chest $4,583 in U. S. currency, as well as a 2007 Chevrolet Tahoe and a 2007 Mitsubishi Eclipse. Discovered in a billfold belonging to Phillips were three different safe combinations. Also, various safe keys were found in the home, and it was later determined that one of the keys accessed a safe which was located at Phillips and Osborne's parents' home located in Grundy, Virginia. Therefore, authorities traveled to that residence and discovered in the safe was $122,000. Officers interviewed Osborne's father, and he advised that the safe, as well as its contents, belonged to his daughter and Phillips.
>
> Following his arrest, Phillips provided a statement to authorities and indicated that he had two narcotic sources, both of whom were residents of South Carolina. Phillips said that he had, on average, received 100 OxyContin 80 milligram pills per week for approximately one and a half to two years. Phillips admitted that he purchased each tablet for $50 and sold same for $100.
>
> . . . .
>
> In considering all statements which have been provided to authorities by both the defendants, as well as other individuals involved in the conspiracy, an estimate of the number of pills distributed range from 9,750 to over 20,000.

(PSR ¶¶ 7-11, 14.)

Pursuant to paragraphs 9 and 10 of her plea agreement, Osborne agreed to waive her right to appeal and her right to file a § 2255 motion. The parties stipulated in paragraph 5 of the agreement that Osborne would be held responsible for the distribution of between 5598 and 18,565 eighty-milligram oxycodone tablets, placing her at a base offense level of 34, and that she qualified for a four-level enhancement as a leader and organizer of the conspiracy, pursuant to United States Sentencing

Manual ("USSG") § 3B1.1(a). The probation officer found that Osborne also qualified for an additional two-level enhancement, based on her possession of a firearm. The PSR recommended that Osborne receive a three-level reduction for acceptance of responsibility, pursuant to paragraph 3 of her plea agreement, for a total offense level of 37. The PSR found that Osborne had a criminal history category of III, giving her a sentencing range of 262 to 327 months imprisonment.

I conducted a sentencing hearing on December 21, 2007. I sustained Osborne's objection to her criminal history category and reduced it to category I. Otherwise, I applied the guidelines calculations as recommended by the PSR, giving Osborne a sentencing range of 210 to 262 months imprisonment. "In consideration of the factors set forth in 18 U.S.C.A. § 3553(a) and in particular the nature and circumstances of the criminal conduct, the history and characteristics of the defendant, and the need for the sentence imposed," I sentenced Osborne to four concurrent sentences of 240 months imprisonment. (Statement of Reasons § IV.) Judgment was entered on December 27, 2007.

Osborne filed this § 2255 motion on or about December 22, 2008, alleging that her conviction is invalid based on various frivolous and pseudo-legal arguments. The 44-page motion argues, among other things, that key provisions of Titles 18 and 21 of the United States Code were not properly enacted and published and, as such, are not valid criminal statutes; that the government is not a legal "person" for purposes of the Civil Rights Act and so Osborne's plea agreement cannot be a valid contract between two persons; that she is not guilty of a federal criminal offense because her

criminal conduct occurred in the Commonwealth of Virginia, not on federal territory; that the United States Code has been copyrighted as the private international law applicable only in the District of Columbia; and that counsel was ineffective for not raising these arguments before advising her to plead guilty. The government filed a Motion to Dismiss, arguing that the § 2255 motion should be dismissed because of: (1) Osborne's waiver of her right to bring a § 2255 motion; (2) Osborne's failure to raise her jurisdictional claims on direct appeal; and (3) Osborne's failure to show prejudice under *Strickland v. Washington*, 466 U.S. 668, 685 (1984), as to her claim of ineffective assistance of counsel.

II

To state a claim for relief under § 2255, the defendant must prove that one of the following occurred: (1) Her sentence was "imposed in violation of the Constitution or laws of the United States"; (2) The "court was without jurisdiction to impose such sentence"; or (3) The "sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C.A § 2255(a). In a § 2255 motion, the defendant bears the burden of proving the grounds for a collateral attack by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir.1958).

A. WAIVER OF COLLATERAL ATTACK.

It is settled circuit law that a "criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and

voluntary." *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005). Whether the waiver is knowing and intelligent depends "upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused." *United States v. Davis*, 954 F.2d 182, 186 (4th Cir. 1992) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

The government argues that Osborne should be bound by her plea agreement waiver of her right to bring a § 2255. In support of this argument, however, the government does not provide the transcript of the guilty plea hearing. Instead, the government's argument rests entirely on the plea agreement itself.

In order to determine the validity of the guilty plea, the plea agreement, and the waiver of § 2255 rights, *Lemaster* requires the court to review the defendant's statements made during the plea hearing. *See, e.g., Tignor v. United States*, No. 7:07CV00075, 2007 WL 3053307, at *1 (W.D. Va. Oct. 19, 2007) (taking government's Motion to Dismiss arguing waiver of § 2255 rights under advisement pending preparation of the plea hearing transcript, citing *Lemaster*). The defendant's signature on the plea agreement and her initials at the bottom of each page carry some weight in determining her understanding of the provisions of the plea agreement, but do not offer any evidence as to the other important elements that the court must consider in determining whether the defendant entered a knowing and voluntary guilty plea, such as her background, experience, and conduct and statements during the plea hearing itself. *Lemaster*, 403 F.3d at 221-22; *Davis*, 954 F.2d at 186. Because the government's Motion to Dismiss is unsupported with this necessary

- 6 -

evidence, I must deny the Motion to Dismiss insofar as it argues that Osborne waived her right to bring this § 2255 motion.

## B. PROCEDURAL DEFAULT.

The government argues that except for her ineffective assistance claims, Osborne should have raised her current issues on direct appeal. I agree. Where a petitioner in § 2255 proceedings attempts to raise claims that could have been raised on appeal, review of such issues is barred absent a showing of cause and prejudice or actual innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Osborne fails to show cause for failing to make her current arguments on direct appeal, nor does she make any attempt to show that she is actually innocent of the conduct for which she stands convicted. Accordingly, with the exception of her ineffective assistance claims, her § 2255 claims must be dismissed as procedurally barred. *Id.; Massaro v. United States*, 538 U.S. 500, 504 (2003) (finding that federal habeas petitioner may bring claim of ineffective assistance claim in § 2255 proceedings whether or not he could have raised the claim on direct appeal).

## C. INEFFECTIVE ASSISTANCE OF COUNSEL.

To prove that counsel's representation was so defective as to require reversal of the conviction or sentence, a defendant must meet a two-prong standard, showing that counsel's defective performance resulted in prejudice. *Strickland*, 466 U.S. at 687. First, the defendant must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances as they existed at the time of the representation. *Id.* at 687-88. The defendant must overcome a strong

- 7 -

presumption that counsel's performance was within the range of competence demanded from attorneys defending criminal cases. *Id.* at 689.

Second, to show prejudice, the defendant must demonstrate a "reasonable probability" that but for counsel's errors, the outcome would have been different. *Id.* at 694-95. When the defendant alleges that counsel's error led her to enter an invalid guilty plea, she can show prejudice only by demonstrating "a reasonable probability that, but for counsel's errors, she would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 58-59. If it is clear that the defendant has not satisfied one prong of the *Strickland/Hill* test, the court need not inquire whether she has satisfied the other prong. *Strickland*, 466 U.S. at 697.

Osborne apparently argues that effective counsel would have advised her to raise all of her current jurisdictional challenges to the indictment and the plea agreement, and that if counsel had done so, Osborne would have rejected the plea agreement and proceeded to trial. This argument has no merit.

First, counsel could reasonably have believed that the best defense strategy for Osborne was straight forward negotiation with the government. The evidence against Osborne was overwhelming that she and her cohorts had obtained and distributed an enormous amount of controlled substances. The plea agreement Osborne signed limited the amount of drugs to be used in calculating her sentence and obtained the government's agreement that she would receive a sentencing break for accepting responsibility. If she had gone to trial and the government had proven the amounts

- 8 -

of drugs mentioned in the plea agreement, Osborne would have faced a minimum sentencing range of 292 to 365 months.

Second, counsel would have reasonably believed that the obscure types of jurisdictional arguments Osborne raises here are frivolous and did not merit serious attention during the process of determining the most beneficial defensive strategy. Courts have soundly rejected the arguments she makes that the federal drug laws are unconstitutional. *See Villanueva v. United States*, No. 09-C-0479, 2009 WL 1867742, at *1 (E.D. Wis. June 26, 2009) (citing numerous cases); *Webb v. Driver*, No. 5:08CV73, 2009 WL 529827, at *3 (N.D.W. Va. Mar. 2, 2009) (same).

In short, I find that counsel followed a reasonable trial strategy in negotiating a plea bargain to limit sentence exposure in the face of a strong government case. I cannot find counsel acted ineffectively in failing to make the type of frivolous arguments that Osborne makes in her § 2255 motion. Because I find that counsel's representation was not deficient, Osborne cannot succeed on her claims of ineffective assistance under *Strickland*/*Hill*. Accordingly, I will grant the Motion to Dismiss as to all claims of ineffective assistance of counsel.

III

In conclusion, because the government does not support its defense that Osborne waived her right to bring this § 2255 action, I will deny the Motion to Dismiss on that ground. Because Osborne fails to establish ineffective assistance of counsel and as all of her challenges to the court's jurisdiction are procedurally barred,

- 9 -

however, I will grant the Motion to Dismiss on these grounds. A separate Final Order will be entered herewith.

                                      ENTER: October 22, 2009

                                      /s/ JAMES P. JONES
                                      Chief United States District Judge